OPINION
{¶ 1} Christi Havens-Tobias and David Tobias (hereinafter referred to collectively as "the Tobiases") appeal from two judgments of the Montgomery County Court of Common Pleas, which granted motions to dismiss in favor of Thomas G. Eagle, Thomas G. Eagle L.L.P. (hereinafter referred to collectively as "Eagle"), and Schwan's Sales Enterprises, Inc. (hereinafter referred to as "Schwan's").
 {¶ 2} The Tobiases' complaint alleges the following facts.
 {¶ 3} The Tobiases purchased food items from Schwan's, a company that delivers prepared meals and other food items to its customers' homes. Customers pay Schwan's drivers for the merchandise they purchase, sometimes leaving checks in the mailbox. Pursuant to this practice, the Tobiases wrote two checks to Schwan's, one on May 15, 1998 for $41.64 and one on May 28, 1998 for $61.68. Both checks were returned by the Tobiases' bank for insufficient funds. Schwan's left a notice regarding the second check in the Tobiases' mailbox. The notice, dated June 26, 1998, provided:
 {¶ 4} "Schwan's Sales Enterprises, Inc. would like to thank you for allowing our representative to come into your home with our products. We sincerely appreciate your business.
 {¶ 5} "At this time, however, we need to inform you that your check number 1482, dated 5-28-98, in the amount of $41.64[1] has been returned to us by your bank unpaid. We are sure this is an oversight and would appreciate your prompt attention to this matter.
 {¶ 6} "Please send a money order in the amount of the check plus a $15.00 service fee to cover handling costs. Mail to the below address or give to our representative the next time he/she visits."
 {¶ 7} Pursuant to this notice, the Tobiases procured a money order in the amount of $56.64, the amount of the second check and the $15 returned check fee, and paged Schwan's driver that he could come pick up the money order. Their page received no response, and the money order was not picked up. Sometime between June 26 and August 6, 1998, the Tobiases attempted to hand the money order to the driver, and he refused to accept it. It appears from the allegations in the complaint that the Tobiases did not tender a money order to Schwan's for the amount of the first returned check and service fee, for which they had received no notice.
 {¶ 8} On August 6, 1998, the Tobiases received a call from MM and Associates, Inc. ("MM"),[2] a collection agency to which Schwan's assigned the Tobiases' debt for the purposes of collection. During this conversation and in a subsequent letter, MM demanded that the Tobiases pay the amount of the two checks, a $20 returned check fee for each check, and $150 in liquidated damages computed pursuant to R.C. 2307.61. The total amount demanded was $293.32. The letter stated that the Tobiases could be guilty of passing bad checks in violation of R.C. 2913.11
and that they had 30 days to pay the amount demanded. If they did not pay, the letter stated that MM would retain an attorney and sue them to collect the money.
 {¶ 9} The Tobiases contacted Schwan's sales manager to complain about MM's tactics. They were informed by the sales manager that he did not care about the tactics because MM "got results." He also told them that it did not matter that they had attempted to pay Schwan's driver or that the driver had refused to accept payment. He told them not to contact Schwan's again. The Tobiases sent money orders to MM to cover the amount of the checks plus a $15 service fee per check; but the money orders were returned marked "Void," and the Tobiases were advised that their offer was not satisfactory. Copies of these documents were faxed to Schwan's.
 {¶ 10} The Tobiases retained legal counsel, who wrote to MM regarding their collection practices on August 26, 1998. MM retained Eagle as counsel. Eagle responded to the letter from the Tobiases' attorney on September 30, 1998. He demanded payment in the amount of $293.32 and attached a copy of the complaint that he intended to file on MM's behalf if payment was not received. The complaint, which was eventually filed on October 9, 1998, alleged that the Tobiases had committed the offense of passing bad checks and asserted claims for breach of contract and unjust enrichment. The complaint demanded the amounts of the checks and returned check fees, liquidated damages, and attorney's fees, for a total of $493.32 plus interest. The case eventually settled, with the Tobiases paying MM $133.32, the face amounts of the two checks plus the $15 returned check fees.
 {¶ 11} In August of 1999, the Tobiases filed suit against Schwan's, MM, and Eagle in the United States District Court for the Southern District of Ohio, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), Section 1692 et seq., Title 15, U.S. Code, and the Ohio Consumer Sales Practices Act ("CSPA"), R.C. 1345.01, et seq., and common law claims of abuse of process, invasion of privacy, defamation, fraud, and malicious prosecution. On May 18, 2000, the federal court dismissed the Tobiases' claim under the FDCPA for failure to state a claim upon which relief could be granted and declined to consider the state law claims, dismissing them without prejudice.
 {¶ 12} On March 20, 2001, the Tobiases filed suit in the Montgomery County Court of Common Pleas against the same defendants, alleging violations of the CSPA and common law claims of abuse of process, invasion of privacy, defamation, and fraud. On April 19, 2001, Eagle filed a motion to dismiss for failure to state a claim upon which relief could be granted pursuant to Civ.R. 12(B)(6). The Tobiases filed a memorandum in opposition to the motion, and Eagle filed a reply memorandum. Prior to the trial court's decision on Eagle's motion, the Tobiases settled with MM, and the claims against it were dismissed with prejudice. On July 12, 2001, the trial court granted Eagle's motion to dismiss and sent final appealable orders to the parties. The Tobiases appealed the trial court's decision to this Court, and, on August 31, 2001, we dismissed the appeal for lack of a final appealable order because the claims against Schwan's were still pending before the trial court.
 {¶ 13} Schwan's filed a motion to dismiss under Civ.R. 12(B)(6) on July 18, 2001. On July 25, 2001, Schwan's filed a motion for summary judgment, arguing that the dismissal of the claims against MM warranted the granting of summary judgment in favor of Schwan's. The Tobiases filed memoranda in opposition to both motions, and Schwan's filed reply memoranda. On September 12, 2002, the trial court granted Schwan's "motion for summary judgment" and disposed of all the issues raised by the motion to dismiss and the motion for summary judgment. The trial court decided against Schwan's on the issue raised in its motion for summary judgment (that summary judgment was proper because the claims against MM had been dismissed) but decided in favor of Schwan's on the argument raised in its motion to dismiss (that the Tobiases had failed to state a claim upon which relief could be granted).
 {¶ 14} The Tobiases appeal, raising two assignments of error, which we will discuss in reverse order.
 {¶ 15} "II. The Trial Court Erred As A Matter Of Law In Granting Defendants Thomas Eagle And Thomas G. Eagle Co., LLP's, [Hereinafter Collectively "Eagle"] Motion To Dismiss."
 {¶ 16} Under this assignment of error, the Tobiases argue that the trial court erred in granting Eagle's motion to dismiss. Specifically, the Tobiases contend that the trial court erroneously concluded that the doctrine of res judicata applied to the opinion of the federal district court with respect to the question of whether the defendants acted reasonably in seeking to collect a debt from the Tobiases. The Tobiases further contend that the trial court erred in concluding that they had failed to state a claim upon which relief could be granted with respect to Eagle.
 {¶ 17} We are not convinced that the trial court appropriately applied the doctrine of res judicata to this case. See Broadnax v. GreeneCredit Serv. (1997), 118 Ohio App.3d 881, 892, fn. 1, 694 N.E.2d 167. The federal court decision determined the FDCPA claims only and did not purport to decide the CSPA claims. However, because the trial court conducted an independent consideration of the Tobiases' claims under the standard for deciding a motion to dismiss, any error in concluding that the federal court's decision had a res judicata effect was harmless. Therefore, we will review the trial court's determination that the Tobiases failed to state a claim upon which relief could be granted with respect to Eagle.
 {¶ 18} A trial court may only grant a motion to dismiss when it appears beyond doubt that the non-moving party can prove no set of facts which would entitle him to the requested relief. See York v. Ohio StateHwy. Patrol (1991), 60 Ohio St.3d 143, 144, 573 N.E.2d 1063. The court's examination should concentrate solely on the complaint as no factual findings are required. See State, ex rel. Drake v. Athens Cty. Bd. ofElections (1998), 39 Ohio St.3d 40, 41, 528 N.E.2d 1253. In its examination of the complaint, all factual allegations contained therein must be accepted as true, as well as all reasonable inferences drawn therefrom. See Mitchell v. Lawson Milk Co. (1988), 40 Ohio St.3d 190,192, 532 N.E.2d 753. We review the trial court's decision de novo. SeeFronczak v. Arthur Anderson, L.L.P. (1997), 124 Ohio App.3d 240, 243,705 N.E.2d 1283.
A. CSPA
 {¶ 19} The CSPA, R.C. 1345.01 et seq., sets forth standards of conduct for suppliers of consumer goods and makes certain deceptive or unfair practices actionable. R.C. 1345.02(A) provides: "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." The statute provides examples of deceptive practices, none of which are relevant to this case. R.C. 1345.02(B). R.C.1345.03(A) provides: "No supplier shall commit an unconscionable act or practice in connection with a consumer transaction." A "consumer transaction" is defined as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." R.C. 1345.01(A). A "consumer" is defined as "a person who engages in a consumer transaction with a supplier." R.C. 1345.01(D). The CSPA encompasses acts taken in pursuance of collecting a debt. See Broadnax, supra, 118 Ohio App.3d at 892.
 {¶ 20} The trial court concluded that Eagle was a supplier as defined in R.C. 1345.01(C).[3] We will assume for the purposes of our discussion that Eagle is a supplier with respect to its debt collection acts regarding the Tobiases. Even making that assumption, we must conclude that the Tobiases failed to allege facts that would constitute a violation of the CSPA by Eagle. The Tobiases argue that Eagle violated the CSPA by threatening to file suit on behalf of MM, misrepresenting MM's legal authority to bring suit, alleging in the complaint that the Tobiases had committed the offense of passing bad checks in violation of R.C. 2913.11, filing suit against the Tobiases despite being advised of the illegality of the lawsuit, and requesting that the Tobiases sign a release when the lawsuit against them was settled.
 {¶ 21} None of the allegations made by the Tobiases in their complaint state a claim for relief against Eagle under the CSPA. Eagle was hired by MM to collect a debt from the Tobiases. In undertaking steps to do so, Eagle's actions were reasonable and lawful. Even interpreting the complaint liberally in favor of the Tobiases, reasonable minds could not conclude that Eagle did anything deceptive, unfair, or unconscionable in attempting to collect the debt. In particular, Eagle's only contact with the Tobiases was through their attorney and consisted of several letters discussing the debt. With regard to the complaint filed against the Tobiases, Eagle did not violate the CSPA by suing the Tobiases to recover the debt. Per the assignment of the debt to MM, MM was entitled to maintain an action against the Tobiases in court to recover the debt. See, also, R.C. 1319.12. Furthermore, R.C. 2307.61
allowed MM to seek liquidated damages in the amount of $150, and R.C.1319.16 allowed it to charge a service fee for each returned check. In short, Eagle acted reasonably in representing his client given the facts in his knowledge at the time. The existence of a possible defense by the Tobiases that they had tendered payment to Schwan's did not render Eagle's actions unfair or unreasonable given that the documents attached to the complaint as exhibits showed that, although there were discussions regarding the tendered payment to MM, Eagle had not been informed of the Tobiases' tendered payment to Schwan's.
 {¶ 22} Accordingly, we conclude that the trial court did not err in determining that the Tobiases had failed to state a claim against Eagle under the CSPA.
 B. Abuse of Process {¶ 23} The requirements for a claim of abuse of process are: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." (Footnotes omitted.) Yaklevich v. Kemp, Schaeffer Rowe Co.,L.P.A., 68 Ohio St.3d 294, 298, 1994-Ohio-503, 626 N.E.2d 115. There is no liability "where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Id. at 298, fn. 2. "[A]buse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order." Robb v. Chagrin Lagoons Yacht Club, Inc.,75 Ohio St.3d 264, 271, 1996-Ohio-189, 662 N.E.2d 9.
 {¶ 24} The Tobiases have failed to allege the existence of the second element of an abuse of process claim. There is nothing in the complaint to suggest that Eagle sought to achieve something that the court was powerless to order. Rather, Eagle filed a complaint seeking to recover a monetary award from the Tobiases. Although the Tobiases might have had a defense to the claims for liquidated damages and attorney's fees, the court had the power to order them to pay a monetary award. The allegations in the Tobiases' complaint do not warrant a conclusion that Eagle even had bad intentions in filing the lawsuit against them, and they certainly did not allege any facts from which reasonable minds could conclude that Eagle sought to achieve an ulterior purpose for which the lawsuit was not designed. The only argued "ulterior purpose" was the collection of the $150 in liquidated damages. However, as stated above, MM was entitled by statute to seek $150 in liquidated damages, and the trial court had the power to award those damages. R.C. 2307.61. Therefore, the trial court did not err in concluding that the Tobiases had failed to state a claim of abuse of process against Eagle.
 C. Invasion of Privacy {¶ 25} The supreme court has recognized three actionable types of invasion of privacy: (1) "the unwarranted appropriation or exploitation of one's personality, [(2)] the publicizing of one's private affairs with which the public has no legitimate concern, or [(3)] the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." Housh v. Peth (1956), 165 Ohio St. 35, 133 N.E.2d 340, paragraph two of the syllabus; King v. Cashland, Inc. (Sept. 1, 2000), Montgomery App. Nos. 18208, 99-1640.
 {¶ 26} The Tobiases appear to be alleging the third type of invasion of privacy, "wrongful intrusion." Under this type of claim, "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." King, supra, citing Sustin v. Fee (1982), 69 Ohio St.2d 143, 145, 431 N.E.2d 992, quoting Restatement of the Law 2d, Torts (1977), Section 652B.
 {¶ 27} The supreme court has stated that "[a] creditor has a right to take reasonable action to pursue his debtor and persuade payment."Housh, supra, at paragraph 3 of the syllabus. However, where a creditor initiates a campaign of harassment against a debtor, its actions are not reasonable and are actionable as an invasion of the debtor's privacy. See id. at 41.
 {¶ 28} The Tobiases have not alleged that Eagle undertook a campaign of harassment against them. Rather, by their own allegations, Eagle's actions consisted of writing letters to the Tobiases' attorney and filing a lawful suit to recover the amount of the debt. These actions are insufficient to form the basis of a claim for invasion of privacy. See Haefka v. W.W. Extended Care, Lorain App. No. 01CA007863,2001-Ohio-1796 (sending a monthly billing statement to debtor regarding care of deceased relative did not constitute invasion of privacy);Huntington Ctr. Assoc. v. Schwartz, Warren Ramirez, L.L.C. (Sept. 26, 2000), Franklin App. No. 00AP-35 (attaching debtor's bill and judgment against debtor to complaint seeking to recover debt did not constitute wrongful intrusion form of invasion of privacy). Cf. Housh, supra (holding that an invasion of privacy claim existed where a collection agency telephoned the debtor six to eight times a day at home and work, sometimes as late as 11:45 p.m., for a period of three weeks, telephoned debtor's superiors at work to inform them of the debt, and called debtor at work three times in fifteen minutes, resulting in threatened loss of employment); King, supra (holding that an invasion of privacy claim existed where creditor called debtor between forty and fifty times, asked if debtor was "related to Rodney King," called debtor a "punk ass mother fucker" and a "faggot," called debtor's sister and friend at least twice informing them that a warrant had been issued for debtor's arrest, called debtor's landlord, and sent debtor's employer letters and faxes about the debt).
 {¶ 29} Accordingly, the trial court did not err in concluding that the complaint failed to state a claim of invasion of privacy against Eagle.
 D. Defamation {¶ 30} Defamation is defined as "a false publication that injures a person's reputation, exposes him to public hatred, contempt, ridicule, shame or disgrace, or affects him adversely in his trade or business."Sweitzer v. Outlet Communications, Inc. (1999), 133 Ohio App.3d 102,108, 726 N.E.2d 1084. In order to state a cause of action for defamation, the following elements must be established: "(1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the required degree of fault in publishing the statement."Hale v. City of Dayton, Montgomery App. No. 18800, 2002-Ohio-542, quotingStanley v. City of Miamisburg (Jan. 28, 2000), Montgomery App. No. 17912. A written statement falsely charging a party with commission of a crime is defamation per se, and harm to the individual is presumed. SeeAkron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv., Inc. (1992),81 Ohio App.3d 591, 601, 611 N.E.2d 955.
 {¶ 31} The Tobiases argue that the following actions by Eagle constituted defamation: demanding payment to MM in a letter to the Tobiases' attorney, filing a lawsuit to collect the debt and damages from the Tobiases, and filing a memorandum in opposition to the Tobiases' motion to dismiss the lawsuit against them. Eagle argues that these statements were privileged against a defamation action because they were made to the Tobiases' attorney and in the context of a judicial proceeding. We agree with Eagle. "A statement made in a judicial proceeding enjoys an absolute privilege against a defamation action as long as the allegedly defamatory statement is reasonably related to the proceeding in which it appears." Hecht v. Levin, 66 Ohio St.3d 458, 460,1993-Ohio-110, 613 N.E.2d 585. A similar rationale applies to Eagle's statements to the Tobiases' attorney. Those statements do not constitute publication. See Snyder v. Ag Trucking, Inc. (C.A.6, 1995), 57 F.3d 484,489 ("[I]f the language complained of was uttered only to the complaining party or to his agent representing him in the matter discussed in the communication, it is not such a publication as will support an action for slander. Particularly is this true where the communication was solicited by the plaintiff or his agent.")
 {¶ 32} Therefore, because Eagle made no statements regarding the Tobiases other than those made to their attorney or in the context of the judicial proceeding against them, the Tobiases cannot state a claim against Eagle for defamation. Accordingly, the trial court was correct in granting Eagle's motion to dismiss with respect to that claim.
 E. Fraud {¶ 33} Common-law fraud requires proof of the following elements: "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." State exrel. The Illuminating Co. v. Cuyahoga Cty. Court of Common Pleas,97 Ohio St.3d 69, 74, 2002-Ohio-5312, 776 N.E.2d 92, quoting Russ v.TRW, Inc. (1991), 59 Ohio St.3d 42, 49, 570 N.E.2d 1076. Furthermore, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Civ.R. 9(B).
 {¶ 34} The Tobiases argue that the following actions by Eagle constituted fraud: demanding payment of liquidated damages on behalf of MM, filing a "void" lawsuit accusing the Tobiases of a crime, failing to drop the lawsuit, requesting attorney's fees in the lawsuit, and filing a memorandum in opposition to the Tobiases' motion to dismiss the lawsuit. None of these actions by Eagle constituted the common law claim of fraud. At the least, the Tobiases failed to allege any justifiable reliance on their part on representations made by Eagle. For this reason alone, they failed to state a claim of fraud against Eagle. Accordingly, the trial court did not err in granting Eagle's motion to dismiss the Tobiases' fraud claim against it.
 {¶ 35} The second assignment of error is overruled.
 {¶ 36} "I. The Trial Court Erred As A Matter Of Law In Granting Defendant Schwan's Sales Enter., Inc.'S ("Schwan's"), Motion To Dismiss."
 {¶ 37} Under this assignment of error, the Tobiases argue that the trial court erred in granting Schwan's motion to dismiss. They argue particularly that the court erred in treating the motion to dismiss as a motion for summary judgment without notice to the parties. They further argue that their complaint did not fail to state a claim upon which relief could be granted.
 {¶ 38} As stated above, Schwan's filed a motion to dismiss based upon Civ.R.12(B)(6) and a motion for summary judgment arguing that the dismissal of the claims against MM warranted the granting of summary judgment in favor of Schwan's. The trial court decided both of these motions on September 12, 2002 utilizing the standard for deciding summary judgment motions. It is not clear from the trial court's decision why it treated Schwan's motion to dismiss as a motion for summary judgment. However, it is clear that it did so.
 {¶ 39} In concluding that the Tobiases had failed to state a claim under the CSPA, the trial court stated:
 {¶ 40} "[T]he Plaintiff's memorandum in opposition to dismiss and memorandum in opposition to summary judgment do not set forth specific facts which show there is a genuine issue of fact for trial. The Court is left with unsupported allegations, no affidavits from the Plaintiffs, and no evidence that controverts the facts established by the moving party."
 {¶ 41} There are several problems with this statement and others like it in the trial court's decision. First, Schwan's filed a motion to dismiss under Civ.R. 12(B)(6). It attached no affidavits or other evidence of the type described in Civ.R. 56.[4] Therefore, there were no facts established by the moving party, and it was inappropriate to require the Tobiases to controvert "facts established by the moving party." Second, because Schwan's filed a motion to dismiss pursuant to Civ.R. 12(B)(6) and attached no affidavits or evidence to that motion, the Tobiases were under no requirement to present competing affidavits. Even more troublesome is the fact that the trial court apparently treated the motion to dismiss as a motion for summary judgment without giving any notice to the parties as required by Civ.R. 12(B), thereby foreclosing the Tobiases from presenting any controverting evidence. Finally, the very purpose of a Civ.R. 12(B)(6) motion to dismiss is to determine whether the "unsupported allegations" of the complaint, if presumed to be true, state a claim upon which relief can be granted.
 {¶ 42} As Schwan's filed a motion to dismiss and there was no justification to convert the motion to one for summary judgment, the trial court should have considered Schwan's motion under the standard for deciding motions to dismiss. The standard for deciding a motion to dismiss is set forth in our discussion of the first assignment of error. A trial court may only grant a motion to dismiss when it appears beyond doubt that the non-moving party can prove no set of facts which would entitle him to the requested relief. See York, supra,60 Ohio St.3d at 144. The court's examination should concentrate solely on the complaint as no factual findings are required. See Drake, supra,39 Ohio St.3d at 41. In its examination of the complaint, all factual allegations contained therein must be accepted as true, as well as all reasonable inferences drawn therefrom. See Mitchell, supra, 40 Ohio St.3d at 192. We review the trial court's decision de novo. See Fronczak, supra,124 Ohio App.3d at 243.
 {¶ 43} It is apparent from the trial court's decision that it did not utilize this standard. The trial court erred in deciding Schwan's motion to dismiss under the wrong standard and in holding the Tobiases to the burden they would have had in opposing a motion for summary judgment. Even if it had been appropriate to convert the motion to a summary judgment motion, the trial court did not give the parties the required notice that it would be doing so. However, this error is harmless if our de novo review of the trial court's decision leads us to conclude that the allegations in the complaint did, in fact, fail to state a claim upon which relief could be granted. See Guthrie v. LiquorControl Comm. (1988), 43 Ohio App.3d 101, 102-03, 539 N.E.2d 697; Rischarv. Yatsko (Sept. 4, 1996), Medina App. No. 2548-M. Therefore, we will address each of the Tobiases' claims against Schwan's.
 {¶ 44} Because most of the Tobiases' claims against Schwan's are claims that Schwan's is vicariously liable for the actions of MM and Eagle, we must address whether Schwan's can be held liable for those actions. As we have already concluded that Eagle committed no tortious acts, Schwan's liability for the actions of Eagle is not relevant to our decision. Therefore, we must consider whether Schwan's could be held liable for the actions of MM. We conclude that it cannot. The Tobiases settled their claims against MM. Because they settled with the primary tortfeasor, there can be no vicarious liability on the part of Schwan's. See Losito v. Kruse (1940), 136 Ohio St. 183, 188, 24 N.E.2d 705 ("A settlement with and release of the servant will exonerate the master."). See, also, Wells v. Spirit Fabricating, Ltd. (1996), 113 Ohio App.3d 282,291-92, 680 N.E.2d 1046; Jackson v. St. Elizabeth Hosp. Med. Ctr. (Sept. 22, 1999), Mahoning App. No. 97 CA 117; Radcliffe v. Mercy Hosp.Anderson (May 14, 1997), Hamilton App. Nos. C-960424, C-960425.
 {¶ 45} Having dealt with the claims of vicarious liability against Schwan's, we will address only Schwan's direct liability under each of the claims.
 {¶ 46} The Tobiases allege that Schwan's conduct violated the CSPA. Schwan's sent a letter to the Tobiases informing them that their second check had bounced and instructing them to tender payment to the driver or to mail payment to an address that was provided. No date was specified for the making of this payment. The Tobiases obtained a money order for the amount of the second check and the returned check fee and tendered the payment to Schwan's driver. However, the driver refused to accept the payment, and Schwan's turned the matter over to a collection agency. As discussed above, the CSPA prohibits unfair practices in consumer transactions. Schwan's assigned the Tobiases' debt to MM while the Tobiases were making attempts to pay the amount they owed. We recognize that the tendered payment was only for the amount of the second check; however, it appears that Schwan's never gave the Tobiases notice that the first check had been returned. We believe that, accepting the facts alleged in the Tobiases' complaint to be true, reasonable minds could conclude that Schwan's actions violated the CSPA. Therefore, dismissal of that claim was not appropriate. We are not by this decision expressing any opinion regarding whether summary judgment may be appropriate on this claim once more facts are discovered.
 {¶ 47} The Tobiases have not alleged any facts under which Schwan's could be directly liable for abuse of process, invasion of privacy, defamation, or fraud. Rather, the Tobiases' abuse of process, invasion of privacy, defamation, and fraud claims against Schwan's allege that Schwan's is vicariously liable for the tortious acts of MM and Eagle. We have concluded that Schwan's cannot be held liable for the actions of MM because the Tobiases settled with MM, and we have concluded that the allegations regarding Eagle's conduct were insufficient to state a claim against Eagle. Therefore, dismissal of the common law claims against Schwan's was appropriate.
 {¶ 48} The trial court's error in treating the motion to dismiss as a motion for summary judgment was harmless with respect to the Tobiases' abuse of process, invasion of privacy, defamation, and fraud claims. However, because dismissal under Civ.R. 12(B)(6) was not appropriate on the Tobiases' CSPA claim, we are reversing the trial court's decision with respect to that claim.
 {¶ 49} The first assignment of error is overruled in part and sustained in part.
 {¶ 50} The judgment of the trial court with respect to Eagle will be affirmed. The judgment with respect to Schwan's will be affirmed in part and reversed in part, and the matter will be remanded to the trial court for further proceedings consistent with this opinion.
FAIN, P.J. and YOUNG, J., concur.
[1] As stated above, the Tobiases' complaint states that the May 15 check was for $41.64 and the May 28 check was for $61.68. It appears from Schwan's notice and other documents attached to the complaint that the Tobiases have transposed the two amounts in their complaint.
[2] MM is owned by Kathy Moore, who was also named as a defendant in the Tobiases' state lawsuit. We will refer to MM and Moore collectively as "MM."
[3] R.C. 1345.01(C) defines "supplier" as "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer."
[4] Schwan's did attach affidavits to its motion for summary judgment. However, those affidavits dealt only with its argument that summary judgment should be granted because the claims against MM and Moore had been dismissed. No affidavits were attached to the motion to dismiss.